1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10
11

In the Matter of the Extradition of
LEE MORRELL

CASE NO. 3:24-MJ-05020-TLF

ORDER RE DETENTION

12
13
14
15

The United Kingdom ("UK") has requested Lee Morrell's extradition pursuant to its

16 extradition treaty with the United States. Dkt. 1. The United States, in accordance with its

17 obligations under the Treaty and pursuant to 18 U.S.C. § 3181 et seq., filed a complaint in this

18 District seeking a warrant for Morrell's arrest. *Id*. On January 23, 2024, the Court found probable

19 cause for the allegations in the complaint and issued a warrant for arrest. Dkts. 1, 2.

20     Morrell was arrested and he had an initial appearance on February 9, 2024, where the

21 court set a detention and status hearing for February 15, 2024.[1] Dkt. 8. After hearing testimony

22 and argument on the government's request for detention at the February 15, 2024 hearing, the

23

24

---

[1] The Court set an extradition/status hearing for March 1, 2024.

1    Court took the request for detention under advisement. Morrell remains in the custody of the

2    U.S. Marshals Service.

3           Having considered the briefing, testimony, and the parties' oral argument the Court

4    GRANTS the motion for detention.

5    **I.      Background**

6           The UK seeks Morrell's extradition for prosecution for the offenses of Bribery contrary

7    to Section 2(3) of the Bribery Act 2010, and Misconduct in Public Office contrary to common

8    law. Dkt. 1. The factual allegations for the charges against Morrell are detailed more fully in the

9    sworn complaint in support of extradition. *Id.* at ¶¶ 6(a) – (k).

10          Prior to moving to United States in 2017, Mr. Morrell was employed as a police officer

11   with the Metropolitan Police in London from September 2006 until November 2017. Dkt. 10.

12   Morrell has not returned to the UK since he left in 2017. He was arrested and interviewed in the

13   UK in September 2015 on suspicion of Misconduct in Public Office for conduct between 2011

14   and 2014. Dkt. 1 at 3 and 41. He was interviewed a second time in December 2015 and then

15   placed on paid administrative leave as a result of the investigation. Dkt 1. On June 8, 2017,

16   Morrell's solicitor received an email from the investigative agency stating his bail had been

17   removed and he was released from custody "under investigation" (referred to as "RUI").[2] Dkt.

18   18, Ex J.  The Metropolitan Police then held an internal hearing and Morrell was dismissed from

19   employment. Dkt. 10. Morrell denies his travel to the United States was "flight." He was married

20

21

22

23          ───────────────
            [2] When on "RUI a suspect is free to go but the investigation remains open, and they may still be charged at
24   a later date". Dkt. 17, Ex J, p. 11.

ORDER RE DETENTION - 2

to a U.S. citizen on May 21, 2018 and owns a small business which he operates in Vancouver, WA.[3] Dkt. 10.

## II.    Legal Standard

Unlike the presumption applicable in domestic criminal proceedings, "[t]here is a presumption against bail in an extradition case." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). The Supreme Court established this presumption against bail in *Wright v. Henkel*, 190 U.S. 40, 63 (1903), explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Id*. at 62.

Under *Wright*, fugitives may not be released on bail unless they demonstrate (1) they are neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant their release. *See, e.g.*, *Matter of Requested Extradition of Kirby*, 106 F.3d 855, 862–63 (9th Cir. 1996); *United States v. Leitner*, 784 F.2d 159, 160-61 (2nd Cir. 1986); *Matter of Extradition of Antonowitz*, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); *Matter of Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996).

---

[3] For confidentiality, Morrell's spouse is referred to herein as "J.", who testified at the hearing on February 15, 2024.

1    While bail is not ordinarily granted in extradition cases, courts may "extend that relief" if

2    "special circumstances" exist in a particular case. *Wright*, 190 U.S. at 63. The party seeking bail

3    has the burden to show that special circumstances exist and he does not present a risk of flight.

4    *Salerno*, 878 F.2d 317; *United States v. Taitz*, 130 F.R.D. 442, 445 (S.D. Cal. 1990). What

5    constitutes a "special circumstance" is varied and case-dependent:

> The term "special circumstances," however, "has never been precisely defined and
> courts have addressed on a case by case basis particularly sufficient circumstances
> that would reverse the strong presumption against bail." *In re Extradition of
> Mainero*, 950 F.Supp. 290, 294 (S.D.Cal.1996); see *Kirby*, 106 F.3d at 863 (noting
> that the Supreme Court's decision in Wright "does not provide significant guidance
> as to what 'circumstances' might be considered 'special' "). Accordingly, "[t]he list
> of potential 'special circumstances' is not limited to those previously recognized in
> published decisions," and "the determination of what constitutes a 'special
> circumstance,' is left to the sound discretion of the trial judge." *In re Extradition of
> Gonzalez*, 52 F.Supp.2d 725, 736 (W.D.La.1999)(citing *Beaulieu v. Hartigan*, 554
> F.2d 1, 1 (1st Cir.1977)).

12   *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1036 (C.D. Cal. 2006). "This 'special

13   circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard

14   made applicable to domestic criminal proceedings by the Bail Reform Act." *Matter of

15   Extradition of Lui*, 913 F. Supp. 50, 53 (D. Mass. 1996).

16   **III.   Discussion**

17   The government seeks to have Morrell detained without bond because he is a flight risk

18   and, even if he is not a flight risk, no "special circumstances" exist that justify release. Dkt. 3.

19   Morrell asserts he is not a flight risk and that special circumstances warrant his release. Dkt. 10.

20   A.   *Flight Risk*

21   In evaluating a fugitive's risk of flight in the extradition context, courts have considered,

22   among other things, the fugitive's financial means, ties with foreign countries, and incentive to

23   flee based on the severity of the offense. *See, e.g.*, *Matter of Extradition of Ricardo Alberto*

24

*Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1304 (S.D. Fla. 2017); *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that a "well-educated and sophisticated" fugitive facing serious charges in foreign country had both the "incentive and ability to flee" and therefore presented a flight risk).

Morrell states he has lived at the same residence in Vancouver, Washington since 2017. He has been happily married to J. for over 5 years. J.'s family, including her mother and children, live in the Vancouver area. Additionally, as Morrell attends to J.'s physical limitations and medical needs, Morrell contends he has a strong incentive to abide by any terms of release. Morrell is a legal permanent resident and operates a small business. He has never made any effort to hide his whereabouts. He has no other criminal history. He participated in two interviews with the Metropolitan Police in 2015, and continued to live in the UK while he was on administrative leave from his job and under bail conditions. Morrell moved to the United States only after he was dismissed from his employment and placed on "RUI". When he did move to the United States, he went through the legal immigration process and received status as a legal permanent resident.

At the detention hearing, J. testified about her physical limitations and medical condition and the level and intensity of care she requires on a daily basis. This care includes ongoing assistance with movement, medical devices, personal care, medications, transportation for medical appointments, and other activities of daily living – all of which Morrell provides. J. states Morrell provides all her in-home care, that Morrell's assistance is essential, and that she has no alternative way to meet her needs. The government has been sympathetic to J. and her need for assistance, but presented several ways in which those needs might otherwise be addressed if Morrell were detained.

The government notes Morrell provides no evidence he made attempts prior to his 2017 departure from the UK to ensure his case was resolved, nor has he shown he made any efforts to contact the government of the UK before he left or after he was in the United States to inform it of his address and contact information. The government states the clear conclusion from Morrell's actions, i.e., relocation to the United States – after his arrest on criminal offenses, dismissal from police force, and being RUI – is that Morrell fled the UK in 2017 to avoid criminal prosecution.

A fugitive charged with a crime in another country is already by definition in flight or deliberately absent from that jurisdiction. *See United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution.") (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 483 (2d Cir. 1976)). The prospect of significant jail time upon extradition also supports a significant incentive to flee. *See, e.g.*, *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d at 1305 (fugitive's age coupled with "a potential twenty-one-year sentence in Panama" rendered fugitive "serious flight risk"); *In re Adame*, 2013 WL 1222115, at *3 (S.D. Tex. Mar. 25, 2013) (fugitive "has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there is a significant risk that he will be formally extradited to Mexico"). Though the government cannot predict the ultimate length of any custodial sentence, it states the maximum sentence for the offense of Misconduct in Public Office is life imprisonment. Dkt. 1 at p. 67. At the detention hearing, both counsel referenced a media story in the UK stating another individual involved in

the same investigation as Morrell had been convicted and sentenced to seven-and-a-half years in prison on July 18, 2023. Dkt. 12, Ex A. p. 6.

When considering the risk of flight Morrell presents, the Court notes Morrell's assimilation into a life with J. within this district, his ongoing business, lack of criminal history, and sincerity all support a conclusion of his not being of risk of flight. Under the Bail Reform Act this would be strong evidence to support release. However, in an extradition case context the Court does not apply the same principles as required under the Bail Reform Act. *See Matter of Extradition of Nacif-Borge*, 829 F.Supp. 1210, 1213 (D. Nev. 1993). Instead, the Court considers the question of flight risk in the context of the United States' obligation to the UK under the applicable treaty where the United States has a substantial interest in surrendering a person subject to extradition in compliance with the Treaty. *See Wright*, 190 U.S. 40. From this perspective, the record shows Morrell left the UK in 2017 when he was RUI and, therefore, was on notice the investigation was still pending and he could still have charges brought against him. Since 2017, he has assimilated into a life in the United States with J.; he has his own business, which provides predictable and reliable income. Nonetheless, as he now faces an uncertain and possibly significant term of custody in the UK, he does represent a risk of flight.

Even if the Court had found him not to be a risk of flight, the Court finds Morrell has not otherwise established that special circumstances warrant his release.

B. *Special Circumstances*

Morrell assert the following special circumstances provide a basis for release: 1) Morrell's care for his wife, who is disabled; (2) the UK's lengthy delay in seeking Morrell's prosecution and extradition while Morrell was living openly in the United States; and (3) the availability of bail in the UK. Dkt. 10, 16. The Court will address each in turn.

1        1.   Morrell's care for his wife, who is disabled.

As noted above, Morrell provides daily care for his wife, J., who is paralyzed from the chest down and dependent on a wheelchair. Dkt. 10. J. testified that she lacks an immediate ability from friends, family members, or care givers to provide such care should Morrell be detained. Family members experience hardship – often significant – whenever a family member is detained pending extradition proceedings. As one court noted:

> [T]h[e] possibility [of unwelcome financial strain], however unfortunate, is present in almost every case where a defendant with family faces detention pending adjudication. Accordingly, the fact that the defendant's family depends on him for financial and emotional support is not a special circumstance weighing in favor of release.

*Matter of Extradition of Drumm*, 150 F. Supp. 3d 92, 99 (D. Mass. 2015). Similar to the circumstance presented here, other courts have denied bail in circumstances in which detention would result in substantial hardship to family members. *See, e.g.*, *In re Extradition of Beresford-Redman,* 753 F. Supp. 2d at 1088 (finding no special circumstance where denying bail would leave young children without a parent and noting deprivation of a parent's love and support, when that parent has been charged with a crime, is not a unique and "special" circumstance, but rather a consequence of every criminal defendant's arrest); *Matter of Extradition of Budrys*, 2019 WL 1958566, at *6 (N.D. Ill. May 2, 2019) (denying bail despite facts that fugitive was the primary caretaker of his three young children while his wife pursued her education, that his charges were non-violent and of a financial nature, that there was some delay in the extradition proceedings, and that fugitive claimed he had a strong possibility of success on the merits).

The Court finds the impact to J. from Morrell being detained to be a significant family hardship. However, the case authority does not make that finding dispositive. In addition, cases have considered significant family hardship persuasive only along with other factors of special

circumstance. *See, e.g.*, *Matter of Extradition of Netzky*, 2022 WL 2315976, at *1 (D. Or. June 28, 2022) (bail granted because: (1) the nearly 20-year delay in prosecution and extradition, and no allegations of criminal conduct since May 2000 in Poland; (2) Ms. Netzky is a legal permanent resident and has strong ties to Oregon and to the United States; (3) Ms. Netzky's familial caretaking responsibilities, including government-certified care of a disabled spouse and primary care of a young daughter, rendered more critical in light of Covid-19; and (4) no compelling evidence that Ms. Netzky has attempted to evade prosecution (which was not initiated until two years after she left Poland)." Thus, standing alone, the finding of a significant family hardship is not sufficient to justify release.

> 2.   The lengthy delay in the UK seeking Morrell's prosecution and extradition ("lack of diplomatic urgency").

Courts have held that a special circumstance exists where the requesting nation has "not made prosecution of [the] offense a priority." *See In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006) (finding a special circumstance where "Mexico waited three years before bringing extradition proceedings against the Respondents, during which Respondents were living openly and notoriously"); *see also United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 57-58 (D. Mass. 2010) (finding lack of explanation for five-year delay between issuance of an order commencing the investigation and the defendant's provisional arrest, where defendant was "easily found," weighed "very heavily in favor of release"); *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1008 (D. Ariz. 2009) (finding lack of explanation for eleven-year delay in seeking extradition, "despite the fact that Petitioner lived openly in the United States and made no effort to hide his whereabouts," was a special circumstance favoring release).

1    The record shows the criminal investigation against Morrell commenced in 2015 and that

2    he was released RUI in 2017. UK authorities did not seek an arrest warrant for Morrell until

3    November 2021. Dkt. 1 at 53. The UK Magistrate Court was aware of Morrell's whereabouts in

4    2021 as his Vancouver, Washington address is listed on the warrant. *Id.* UK authorities then

5    waited until September 2023 to request extradition from the United States. Dkt. 1 at 10. This

6    extradition case was commenced January 23, 2024, and Morrell was arrested in his home on

7    February 9, 2024. The UK investigation (which includes Morrell) resulted in conviction(s) and

8    sentencing of other co-defendants in July 2023. *See* Dkt. 12-1 at 6.

9    Morrell's argument of lack of diplomatic urgency is not a special circumstance. The

10   Court acknowledges the procedural history of the UK case, the fact of Morrell's prior arrest and

11   release RUI, the dates of the alleged criminal conduct, and other facts as stated in in the record.

12   Nonetheless, there is no time limit in the Treaty for requesting extradition and there is no

13   unreasonable delay. The UK investigation was active in July 2023 as evidenced by co-defendants

14   being convicted and sentenced and then Morrell was arrested in February 2024. This

15   approximate six-year delay from being released RUI with Morrell knowing he was still subject to

16   having charges brought is not unreasonable. *Compare Wroclawski*, 634 F. Supp. 2d at 1008 (a

17   nearly 12 year delay was a special circumstance) *with In re Extradition of Drayer,* 190 F.3d 410,

18   415 (6th Cir. 1999) (the fourteen-year delay was not a special circumstance) and *Matter of*

19   *Extradition of Drumm*, 150 F. Supp. 3d at 98 (7 year delay was not unreasonable). But,

20   diplomatic urgency is not just temporal and must be considered within the contours of a treaty as

21   other important considerations, such as the interests of the treaty parties, the foreign policy

22   concerns, and relationships with the United States.

23

24

1        Even if Morrell could show lack of diplomatic urgency – which he has not – any

2  consideration of delay must be left to the discretion of the U.S. Secretary of State. *See Man-Seok*

3  *Choe v. Torres*, 525 F.3d 733, 741 (9th Cir. 2008) (concluding "[t]o the extent there was a delay,

4  this is a matter left for the Secretary of State's consideration"); *Martin v. Warden, Atlanta Pen.*,

5  993 F.2d 824, 830 (11th Cir. 1993) (fugitive "should direct his argument that extradition is unjust

6  in this case based on Canada's alleged lengthy delay in seeking extradition or on humanitarian

7  grounds to the Executive Branch").

8        3.   Availability of bail in the UK.

9        Morrell asserts the availability of bail under the pending case in the UK is a special

10  circumstance warranting release. He cites several cases which support the proposition that the

11  possibility of bail on the underlying offense may properly be considered in combination with

12  other factors to support a finding of special circumstances. Dkt. 12. The government notes a split

13  of authority and cites cases which hold the "availability of bail" in the UK as an additional

14  special circumstance is incorrect factually and legally.  Dkt. 16.

15        Here, Morrell states since other individuals charged from the same investigation as

16  Morrell were granted unconditional bail pending trail, bail is available on the underlying

17  substantive offense and "it appears very likely that Mr. Morrell would be granted bail in the

18  UK." Dkt. 12. In response, the government states that, while other individuals may have been

19  granted bail, Morrell's bail determination is not definitive given his having relocated to the

20  United States during the pendency of the criminal investigation. Dkt. 16.

21        Here, bail in the UK is not guaranteed. Also, its availably to Morrell is not assured and

22  would likely be less certain given his relocation to the United States, which required the

23  commencement of extradition proceedings. The Court notes the split in authority, but follows the

24

ORDER RE DETENTION - 11

reasoning of the approach which does not consider the possibility of bail as a special

circumstance. *In re Extradition of Kyuing Joon Kim*, 2004 WL 5782517, at *2 (C.D. Cal. July 1,

2004) ("[M]ost extraditees would be entitled to bail and this directly contradicts Supreme Court

and federal appellate court decisions which conclude that bail is the exception rather than the

rule." (cleaned up)).

### IV.   Conclusion

Morrell has not met his burden to show he would not be a flight risk and has failed to

establish the confluence of special circumstances he asserts are sufficient to overcome the strong

presumption against bond.  Accordingly, the Court GRANTS the motion for detention.

Dated this 23rd day of February, 2024.

David W. Christel
Chief United States Magistrate Judge

ORDER RE DETENTION - 12